FILED
CLERK, U.S. DISTRICT COURT
July 5, 2019
CENTRAL DISTRICT OF CALIFORNIA
BY: ___TG___ DEPUTY

1  **LAKESHORE LAW CENTER**
2  Jeffrey Wilens, Esq. (State Bar No. 120371)
   18340 Yorba Linda Blvd., Suite 107-610
3  Yorba Linda, CA 92886
4  714-854-7205
   714-854-7206 (fax)
5  jeff@lakeshorelaw.org

6  **THE SPENCER LAW FIRM**
7  Jeffrey P. Spencer, Esq. (State Bar No. 182440)
   2 Venture, Suite 220
8  Irvine, CA 92618
9  949-240-8595
   949-377-3272 (fax)
10 jps@spencerlaw.net

11
12 Attorneys for Plaintiff

13           **UNITED STATES DISTRICT COURT**,
14    **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

15 | MICHELL T. FRANKLIN,              ) Case No. 8:18-cv-02085-JLS-DFMx
16 | KARA SAMPSON,                     )
   | CYBELE A. MUNSON,                 )
17 | on behalf of themselves and all   ) Complaint filed July 11, 2018
18 | persons similarly situated,       ) Trial Date:
   |                                    ) Pre-Trial Date:
19 |         Plaintiff,                ) Discovery Cutoff:
20 |                                    ) **Class Action**
   |      v.                           )
21 |                                    ) **SECOND AMENDED COMPLAINT**
22 | MIDWEST RECOVERY                  ) 1. Violation of California Consumer
   | SYSTEMS, LLC., COOPER             ) Credit Reporting Agencies Act (Civil
23 | FINANCIAL, LLC PREVIOUSLY         ) Code § 1785 et. seq.)
24 | SUED AS DOE NO. 1,                ) 2. Violation of California Unfair
   | MARK GRAY PREVIOUSLY              ) Competition Law (Business and
25 | SUED AS DOE NO. 2,                ) Professions Code § 17200)
26 | NATIONAL CREDIT                   )
   | ADJUSTERS, LLC PREVIOUSLY         )
27 | SUED AS DOE NO. 3,                )
28

1
SECOND AMENDED COMPLAINT

| | |
|---|---|
| DEBT MANAGEMENT, LLC PREVIOUSLY SUED AS DOE NO. 4, AND DOES 5 THROUGH 100 INCLUSIVE,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Department 10-A<br>) Hon. Josephine L. Staton |

Plaintiffs allege as follows:

## PARTIES

1. Plaintiffs MICHELL T. FRANKLIN, KARA SAMPSON (formerly known as Kara Christensen), and CYBELE A. MUNSON, individuals, bring this action on behalf of themselves, and on behalf of a class of similarly situated persons pursuant to Code of Civil Procedure § 382. Plaintiffs are residents of the State of California and competent adults.

2. Plaintiffs are informed and believe and thereupon allege that Defendant MIDWEST RECOVERY SYSTEMS, LLC ("Midwest") is now, and at all times mentioned in this Complaint was, a limited liability company based in St. Charles, Missouri. Defendant has not designated a principal place of business in the State of California.

3. Plaintiffs are informed and believe, and thereupon allege, that Defendant COOPER FINANCIAL, LLC ("Cooper") is now, and at all times mentioned in this Complaint was, a limited liability company that is a citizen of the State of Florida. It was previously sued and named as Doe Defendant no. 1.

4. Plaintiffs are informed and believe, and thereupon allege, that Defendant MARK GRAY ("Gray") is now, and at all times mentioned in this Complaint was, a natural person and citizen of the State of Florida. He was previously sued and named as Doe Defendant no. 2.

5. Plaintiffs are informed and believe, and thereupon allege, that Defendant NATIONAL CREDIT ADJUSTERS, LLC ("NCA") is now, and at all times mentioned in this Complaint was, a limited liability company that is a citizen of the State of Kansas. It was previously sued as Doe Defendant no. 3.

6. Plaintiffs are informed and believe, and thereupon allege, that Defendant DEBT MANAGEMENT, LLC ("Debt Management") is now, and at all times mentioned in this Complaint was, a limited liability company that is a citizen of the State of Florida. It was previously sued as Doe Defendant no. 4.

7. Plaintiffs do not know the true names or capacities of the Defendants sued herein as DOES 5 through 100 inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and thereon allege, that each of these fictitiously named Defendants is responsible in some manner for the occurrences

herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by those defendants. Each reference in this complaint to "Defendant" or "Defendants" or to a specifically named defendant refers also to all defendants sued under fictitious names.

8. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned each of the Defendants, including all Defendants sued under fictitious names, and each of the persons who are not parties to this action but are identified by name or otherwise throughout this complaint, was the alter ego of each of the remaining defendants, was the successor in interest or predecessor in interest, and was the agent and employee of each of the remaining defendants and in doing the things herein alleged was acting within the course and scope of this agency and employment.

## CLASS ALLEGATIONS

9. Plaintiffs are members of the Main Class of persons, the members of which are similarly situated to each other member of that class. The Main Class is defined as follows:

> All California residents whose SUBJECT LOAN DEBT INFORMATION was furnished by Defendant Midwest to consumer reporting agencies during the past two years from filing of the original complaint. For purposes of this definition, "SUBJECT LOAN DEBT INFORMATION" means information that a debt was allegedly owed to any of the following original creditors: VIP PDL Services, LLC, a/k/a VIP

Loan Shop; SCS Processing, LLC, a/k/a Everest Cash Advance; Action PDL Services, LLC, a/k/a Action Payday; BD PDL Services, LLC, a/k/a Bottom Dollar Payday, Integrity PDL Services, LLC, a/k/a Integrity Payday Loans, a/k/a IPL Today; My Quick Funds d/b/a Sierra Financial, LLC; Fast EFunds a/k/a FastEfunds.com.

10. Plaintiffs Sampson and Munson are members of the Restitution Subclass of persons, the members of which are similarly situated to each other member of that subclass. The subclass is defined as follows:

> All members of the Main Class who paid money to Defendant Midwest after Midwest furnished the SUBJECT LOAN DEBT INFORMATION to consumer reporting agencies.

11. Plaintiffs are informed and believe, and thereupon allege, that the Main Class consists of approximately 11,000 persons and the Restitution Subclass consists of approximately 200 persons.

12. The identity of the members of the classes is ascertainable from Defendant Midwest's own business records or those of its agents.

13. The Plaintiffs and Class Members' claims against Defendants involve questions of law or fact common to the class that are substantially similar and predominate over questions affecting individual Class Members in that all Class Members had alleged payday loan debt that was reported by Defendant Midwest to consumer reporting agencies and, in each instance, Defendant reported an illegal and void debt, and in some cases the Class

5
SECOND AMENDED COMPLAINT

Members paid money to Midwest.

14. The claims of Plaintiffs are typical of the claims of the members of the Classes.

15. Plaintiffs can fairly and adequately represent the interests of the Classes.

# FIRST CAUSE OF ACTION FOR VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CIVIL CODE § 1785 ET. SEQ., AGAINST ALL DEFENDANTS (BROUGHT AS AN INDIVIDUAL ACTION AND AS A CLASS ACTION)

16. Plaintiffs incorporate in this cause of action the allegations contained in paragraphs 1 through 15, inclusive.

17. VIP PDL Services, LLC, a/k/a VIP Loan Shop, SCS Processing, LLC, a/k/a Everest Cash Advance, Action PDL Services, LLC, a/k/a Action Payday, BD PDL Services, LLC, a/k/a Bottom Dollar Payday, Integrity PDL Services, LLC, a/k/a Integrity Payday Loans, a/k/a IPL Today, My Quick Funds d/b/a Sierra Financial, LLC, and Fast EFunds a/k/a FastEfunds.com were payday loan companies operating between 2009 and 2014 from one of several overseas locations. Although the companies had no licenses to make loans in California, as required by California law, and despite cease and desist orders issued by the State of California, they

made tens of thousands of loans to California residents.

18. All of the loans were illegal for a number of reasons, including inter alia, because the lenders were not licensed and because they charged more in finance charges than permitted by California law. Under California law, such loans are and were deemed void by operation of law and the lender was deemed to have forfeited principal and interest.

19. By 2014, it was well known and understood in the financial industry, including in the collection industry, that these loans were illegal. All of the lenders shut down operations by 2015.

20. Plaintiffs obtained loans from Bottom Dollar Payday and Everest Cash Advance 2011 and 2012.

21. On a date unknown to Plaintiffs, the lenders assigned, transferred or sold the debt to Defendant NCA, which subsequently transferred it to Debt Management, which transferred it to Defendant Cooper. Defendant Mark Gray is the owner and sole manager of Cooper and controls all of its actions. In March 2017, Cooper and Mark Gray hired Defendant Midwest to collect the debt, using whatever means were necessary including by furnishing the debt information to the consumer reporting agencies.

22. Knowing the debt was not enforceable in court and few if any borrowers would voluntarily pay such debt, Midwest decided to use the

7
SECOND AMENDED COMPLAINT

leverage of credit-reporting to compel borrowers to make payments on the alleged debt.

23. In any event, on May 13, 2018 with respect to Plaintiff Franklin, and on December 24, 2017 with respect to Plaintiffs Sampson and Munson, Midwest furnished information to consumer credit reporting agencies, including Equifax, Experian and TransUnion, stating that Plaintiffs owed money to the illegal lenders.

24. Specifically, with respect to Plaintiff Franklin, Midwest furnished information claiming she owed $308 to Bottom Dollar and $1,125 to Everest Cash Advance and that the accounts were in collections and past due for years.

25. After Franklin disputed these debts to TransUnion, the credit bureau contacted Midwest, which verified that the debt information was accurate. As a result, despite Plaintiffs' dispute, TransUnion refused to remove the debt information from her reports. TransUnion indicated the debt information would remain on her credit report through February 2019

26. With respect to Plaintiff Sampson, on December 24, 2017, Midwest furnished information claiming she owed $817 to Everest Cash Advance and that the account was in collections and past due for years.

27. Shortly thereafter, Sampson received an alert from a credit monitoring

service and discovered the new collections account. She called the phone number associated with the collection agency and spoke to someone at Midwest Recovery. The agent told her that if she paid $408, he would remove the debt from her credit report; otherwise it would remain. Under duress, and in an effort to remove the damaging adverse information, she paid the money. Shortly thereafter, the debt was removed from her credit reports.

28. With respect to Plaintiff Munson, Midwest furnished information claiming she owed $505 to Bottom Dollar and that the account was in collections and past due for years.

29. Shortly thereafter, Munson became aware of the collections account. She wrote a dispute letter to Midwest, but there was no response. She then called Midwest and spoke to Rich Akerman there. He agreed to remove the debt from her credit report if he would pay the $505. Under duress, and in an effort to remove the damaging adverse information, she paid the money. Shortly thereafter, the debt was removed from her credit reports.

30. However, as explained above, Plaintiffs owed no money to these lenders because any loans made by the lenders to her were void, which fact Defendant Midwest knew or should have known.

31. Apart from the items reported by Midwest, Plaintiffs had good creditworthiness, but any consumer would have been significantly harmed by the addition of these "fresh collection" accounts to their credit reports.

32. During the class period, Defendant Midwest engaged in similar conduct with regard to the class members by furnishing false information to the consumer reporting agencies claiming that the class members owed money to the subject lenders even though all of the loans were void.

33. Defendant Midwest's purpose for furnishing the false debt information to the consumer reporting agencies was to coerce Plaintiffs and the class members to make payments on the illegal loans, which payments would enrich Midwest.

34. Plaintiffs are informed and believe, and thereupon allege, that some 200 class members, such as Sampson and Munson, made payments under duress triggered by the illegal credit reporting practice. The amount paid was approximately, $94,366. In the previous version of the complaint, Plaintiff Franklin stated that once information was obtained through discovery about the success of the efforts to coerce payments, she may seek to amend the complaint to allege additional causes of action and to add additional plaintiffs. She does that now.

35. As a result of Defendant Midwest's actions or inactions, one or more of the consumer reporting agencies continued to falsely report the status of Plaintiff and the Class Members' until an unknown date.

36. When Defendant Midwest furnished information regarding the particular debts to the reporting agencies, it knew or should have known that the payday loan debt was illegal and void.

37. Accordingly, Defendant Midwest violated Civil Code § 1785.25 (a) each time it furnished inaccurate or incomplete information about the particular debt to a reporting agency.

38. Defendants Cooper/Gray are liable for the foreseeable torts of their agent, Midwest, including the furnishing of inaccurate or incomplete information about the payday loan debt.

39. Each of Midwest's violations was a willful violation in that it intentionally and knowingly furnished inaccurate or incomplete information to the consumer credit reporting agencies for the purpose of extorting payment on the debts.

40. Plaintiffs and the Class Members are consumers within the meaning of section 1785.3 (b) of the California Consumer Credit Reporting Agencies Act in that they are natural individuals.

41. Plaintiffs and the Class Members suffered damages as a result of the

violations of Civil Code § 1785.25 (a) as set forth above in that their credit scores and credit ratings were adversely impacted by the false reporting of the debt.

42. In addition, Plaintiffs suffered actual damages in the form of emotional distress, pain and suffering, humiliation, injury to reputation, and prelitigation attorney's fees incurred trying to clear her credit.

43. Plaintiffs and each Class Member are entitled to recover actual damages pursuant to Civil Code § 1785.31 (a) (2) (A) including court costs, impairment of credit, loss of wages, attorney's fees and pain and suffering in an amount according to proof.

44. Plaintiffs and each Class Member are entitled to recover punitive damage pursuant to Civil Code § 1785.31 (a) (2) (B) in the amount of $5,000 against Defendants.

45. In addition, the Class as a whole is entitled to recover punitive damages in an amount the court may allow. In determining the amount of award in any class action, the court shall consider among relevant factors the amount of any actual damages awarded, the frequency of the violations, the resources of the violator and the number of persons adversely affected.

46. Further, Plaintiffs and the Class Members are entitled to injunctive relief pursuant to Civil Code § 1785.31 (b). Defendant Midwest must

update the information reported to the credit bureaus to delete all references to the debt and must not report the payday loan debt in the future.

## SECOND CAUSE OF ACTION FOR VIOLATION OF THE CALIFORNIA CONSUMER UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200 ET. SEQ., AGAINST ALL DEFENDANTS (BROUGHT AS INDIVIDUAL ACTION AND AS A CLASS ACTION)

47. Plaintiffs incorporate in this cause of action the allegations contained in paragraphs 1 through 46, inclusive.

48. The Unfair Competition Law prohibits any person from engaging in unfair competition as that term is defined in Business and Professions Code § 17200, which includes any "unlawful, unfair or fraudulent business act or practice," "unfair, deceptive, untrue or misleading advertising," and any act prohibited by Chapter 1 (commencing with section 17500) of Part 3 of Division 7 of the Business and Professions Code.

49. During the relevant time frame, Defendants violated Civil Code § 1788.13 (f) and 15 USC § 1692e(5) and (10) by threatening to report the alleged debts to the consumer reporting agencies even though they were not reportable and Civil Code § 1785.25 (a) by reporting false and

inaccurate information to the consumer reporting agencies as alleged above and therefore engaged in unfair competition.

50. In addition, Defendants conduct was "unfair" in that they extorted money by threatening to do acts which were not authorized by law.

51. As a proximate result of the violation of the UCL as set forth above, Plaintiffs Sampson and Munson suffered injury in fact (damage to their creditworthiness) and sustained monetary loss (approximately $400-$500) according to proof.

52. Similarly, during the Class Period, each Member of the RESTITUTION SUBCLASS paid money to Defendants pursuant to the aforementioned extortion.

53. Pursuant to Business and Professions Code § 17203 and § 17204, Plaintiffs are empowered to compel Defendants to restore to Plaintiffs and the Class Members the money or property that Defendants acquired as a result of any act which constitutes unfair competition.

54. Further, Sampson and Munson and the Class Members are entitled to injunctive relief under the UCL. Defendants continue to try to collect on the invalid debts and even though they claim to have stopped reporting it for now, they continue to threaten to do so in order to pressure Class Members to pay.

# REQUEST FOR JURY TRIAL

WHEREFORE, Plaintiffs request trial by jury.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment on all causes of action against Defendants as follows:

1. For an order certifying this matter as a class action;

2. For a declaration of the rights and liabilities of the parties including a declaration that Defendants cannot furnish information to consumer credit reporting agencies regarding the referenced payday loan debt;

3. For preliminary and permanent injunctive relief pursuant to Civil Code § 1785.31 (b) and Business and Professions Code § 17203 restraining and enjoining Defendants from threatening to report or reporting the debt information set forth above and requiring it to notify all consumer reporting agencies to remove that debt information;

4. For actual damages on the first cause of action according to proof;

5. For punitive or exemplary damages on the first cause of action;

6. For restitution on the second cause of action;

7. For interest on the sum of money awarded as damages or restitution;

8. For reasonable attorney's fees pursuant to Civil Code § 1785.31 (d) and (f), pursuant to the Private Attorney General doctrine in Code of Civil Procedure § 1021.5, pursuant to the "common fund" doctrine, and

pursuant to the "substantial benefit" doctrine.

9. For costs of suit incurred herein; and

10. For such other and further relief as the court may deem proper.

DATED: July 3, 2019

Respectfully submitted,

By *Jeffrey Wilens*
JEFFREY WILENS
Attorney for Plaintiff