JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 8:18-cv-02085-SB-DFMx | Date: | 9/24/2021 |
|---|---|---|---|

| Title: | *Michell T. Franklin et al. v. Midwest Recovery Systems, LLC et al.* |
|---|---|

| Present: The Honorable | **STANLEY BLUMENFELD, JR., U.S. District Judge** |
|---|---|

| Victor Cruz | Miriam Baird |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Jeffrey N. Wilens | Brett Nicole Taylor |

**Proceedings:** **HEARING: ORDER GRANTING MOTION FOR FINAL CLASS SETTLEMENT APPROVAL AND ATTORNEYS' FEES AND COSTS (Dkt. Nos. 120 and 122)**

Before the Court are named Plaintiffs Kara Sampson and Cybele A. Munson's motions for final approval of the class action settlement and award of attorneys' fees and costs and incentive awards. Dkt. Nos. 120, 122. For the reasons set forth below, the Court **GRANTS** both of Plaintiffs' motions.

I. BACKGROUND

This case is a putative class action brought by Plaintiffs against Midwest Recovery Systems and its owners (Defendants) on behalf of California residents regarding collection of unenforceable debt on payday loans. Third Amended Complaint (TAC), Dkt. No. 59. Plaintiffs assert violations of the California Consumer Credit Reporting Agencies Act (CCRAA), Cal. Civ. Code §§ 1785.31 *et seq.*, and the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, alleging that Defendants implemented a scheme to extort money from borrowers whose debt was not legally valid, TAC ¶ 28. Defendants allegedly used

"the leverage of credit-reporting" to collect the debt by furnishing Plaintiffs' information to credit reporting agencies, including Equifax, Experian, and TransUnion. *Id*. ¶¶ 29–30.

On February 5, 2021, this Court certified a class of persons "who paid money to Defendant Midwest after Midwest furnished the SUBJECT LOAN DEBT INFORMATION to consumer reporting agencies." Order re Motion for Class Certification (Class Cert.), Dkt. No. 104, at 3, 14.[1] The parties negotiated a settlement of this class action and moved for the Court's preliminary approval of the proposed settlement under Federal Rule of Civil Procedure 23(e). Dkt. No. 116. The Court granted preliminary approval of this settlement on May 20, 2021. Dkt. No. 118.

### A. Terms of Proposed Settlement

*Class definition*: The settlement class consists of the following:

All California residents who paid money to Defendant Midwest for the SUBJECT LOAN DEBT after Midwest furnished information to credit reporting agencies regarding the SUBJECT LOAN DEBT.

For purposes of this definition, "SUBJECT LOAN DEBT" means debt that was allegedly owed to any of the following original creditors: VIP PDL Services, LLC a/k/a VIP Loan Shop; SCS Processing, LLC, a/k/a Everest Cash Advance; Action PDL Services, LLC, a/k/a Action Payday; BD PDL Services, LLC, a/k/a Bottom Dollar Payday, Integrity PDL Services, LLC, a/k/a Integrity Payday Loans, a/k/a IPL Today; My Quick Funds d/b/a Sierra Financial, LLC; Fast EFunds a/k/a FastEFunds.com.

Class Action Settlement Agreement (Settl. Agreement), Dkt. No. 116-2, at 3–4.

---

[1] The Court denied Plaintiffs' motion to certify a class of "[a]ll California residents whose SUBJECT LOAN DEBT INFORMATION was furnished by Defendant Midwest to consumer credit reporting agencies during the past two years from filing of the original complaint." Class Cert., at 3, 12.

*Class benefits*: The settlement provides for monetary relief, as Defendants have "already deleted the adverse information from their credit reports." Motion for Settlement Final Approval (Settl. Final App.), Dkt. No. 122, at 9. Defendants have agreed to deposit $208,743 into a settlement fund managed by Settlement Administrator, CPT Group of Irvine, which "shall be allocated to Settlement Awards, service awards to Plaintiffs, attorneys' fees and costs, and settlement administration expenses." Settl. Agreement, at 8. The class members will be paid a total of $103,742.79, with each member paid exactly what they paid to Defendants," as "100% restitution of all money paid by the class member[s]." Settl. Final App., at 9.

*Class notice*: Class members will be noticed through "U.S. mail to the most recent address for each Class Member reflected in the records produced by Defendants and corrected through the National Change of Address" database. Settl. Agreement, at 11. For notices that are "returned undeliverable without a forwarding address, the Class Administrator shall complete at least one advanced address search or skip trace and re-mail the notice to any new address identified for a Class member." *Id*. at 12. The Class Administrator will also establish a settlement website "which will display, at a minimum, the operative Complaint, Notice, this Settlement Agreement, opt-out form, and the Preliminary Approval Order," as well as Plaintiffs' subsequent "motion for an award of attorneys' fees, costs and service awards to Plaintiffs." *Id*. "All Class Members will be bound by this Settlement and judgments of this Court in this Action unless they exclude themselves in writing." *Id*. at 13.

*Attorneys' fees and costs*: Plaintiffs shall move the Court for an award of attorneys' fees and costs, not to exceed $86,000.21. *Id*. at 9.

*Incentive awards to class representatives*: Plaintiffs shall also move the Court to approve an incentive aware for the class representatives "in an amount of not more than $5,000 for each Plaintiff," and "Defendants shall not be responsible for Plaintiffs' tax responsibilities related to any amounts received as part of this Settlement Agreement." *Id*. Named "Plaintiff [Michell] Franklin, who is not part of the certified class, is receiving no payment as part of the class settlement but has negotiated her own settlement." Settl. Final App., at 10.

*Release*: The proposed settlement agreement provides that "Plaintiffs and each Settlement Class Member . . . release, resolve, relinquish, and discharge forever each of the Released Parties . . . from . . . any and all claims of liability

whether known or unknown . . . that were brought or could have been brought in the Action." <u>Settl. Agreement</u>, at 16–17.

*   *   *

Plaintiffs now bring a motion for final approval of the class action settlement. <u>Settl. Final App</u>. Plaintiffs seek final approval of the settlement, attorneys' fees and costs amounting to $86,000.21, and incentive awards for the class representatives of $5,000 each.

## II.   SETTLEMENT APPROVAL

### A. Certification of the Class

As noted above, the Court certified the "Restitution Subclass" in Plaintiffs' Motion for Class Certification, which included Plaintiffs Samson and Munson, along with 187 additional members. <u>Class Cert.</u>, at 4. Since that order, however, "Defendants located 23 additional instances where consumers paid money to Midwest Recovery after the subject payday loan debt was reported." Declaration of Jeffrey Wilens in Support of Settlement Final Approval, Dkt. No. <u>122-1</u>, ¶ 6. After accounting for "individuals [who] paid on more than one loan, the new total number of class members is 209." <u>Id</u>. The additional 20 consumers paid $9,376.45 to Defendants "around April 2020," while the certified 189 class members paid a total amount of $94,366.34 to Defendants "between 2017 and 2018." <u>Id</u>. ¶¶ 3, 6. The total amount all 209 consumers paid to Defendants is $103,742.79. <u>Id</u>. ¶ 6. The additional 20 consumers do not materially affect the Court's analysis in granting certification or change the certified class definition, noted *supra*. <u>Class Cert</u>. Therefore, the restitution subclass certified by the Court in its prior order shall include all 209 class members.

### B. Final Approval of the Settlement

Plaintiffs seek final approval of the class settlement. At this stage, the Court must "find[] that the settlement is 'fair, reasonable, and adequate.'" <u>Lane v. Facebook, Inc.</u>, 696 F.3d 811, 818 (9th Cir. 2012) (quoting <u>Fed. R. Civ. P.</u> 23(e)). The Court's inquiry is guided by several, non-exclusive factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent

of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* (internal quotation marks omitted) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "Each factor does not necessarily apply to every class action settlement, and others may also be considered." *Miller v. Wise Co.*, No. ED CV17-00616 JAK (PLAx), 2020 WL 1129863, at *5 (C.D. Cal. Feb. 11, 2020).

### 1. Strength of Plaintiffs' Case and Settlement Amount

To determine if a settlement is fair, "the Court must balance against the risks of continued litigation, including the strengths and weaknesses of Plaintiffs' case, the benefits afforded to class members, and the immediacy and certainty of a recovery." *LaGarde v. Support.com, Inc.*, No. C12-0609 JSC, 2013 WL 1283325, at *4 (N.D. Cal. Mar. 26, 2013) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). There's no one formula courts must use to determine the likelihood of Plaintiffs' success, but rather "nothing more than an amalgam of delicate balancing, gross approximations and rough justice," where even a "ballpark valuation" is sufficient. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (internal quotation marks omitted) (first quoting *Officers for Just. v. Civ. Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982), then quoting *Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)).

Plaintiffs believe their case is "quite strong." Settl. Final App. at 18. But Defendants had filed a motion for summary judgment prior to class certification, alleging that they did not know that the "debt at issue was purportedly 'void' or 'illegal' under California law," Motion for Summary Judgment, Dkt. No. 86-1, at 2, indicating that Defendants still intended to challenge Plaintiffs' claims to the point of "reduc[ing] or eliminat[ing] Defendants' liability." *LaGarde*, 2013 WL 1283325 at *4. Class members will receive full restitution for the money they paid to Defendants, a total of $103,742.79, which "sufficiently accounts for both the strength of Plaintiffs' case and the risks associated with continued litigation."[2] *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Prods.*

---

[2] The certified class sustained injury that appears to be recoverable by two separate theories: restitution or actual damages. Class Cert. at 13. For purposes of punitive damages under the CCRAA, they appear to be eligible to seek such a remedy in addition to the asserted actual damages. Cal. Civ. Code § 1785.31(a)(2)(B).

*Litig.*, No. 8:10ML02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 94484, at *235 (C.D. Cal. June 17, 2013).

### 2. Duration of Further Litigation

"[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted) (quoting 4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. 2002)).  Class Counsel have devoted over 500 hours to this litigation, *see* Settl. Final App. at 19, which will only increase if the case goes to trial, where a verdict in favor of Plaintiffs would likely be appealed, *see In re Toyota Motor Corp.*, 2013 U.S. Dist. LEXIS 94484, at *233 (finding this factor weighed in favor of settlement because "[c]ontinued litigation of Plaintiffs' claims is unlikely to be resolved quickly, and any resolution by this Court is likely to be the subject of an appeal").  An immediate recovery for class members is preferable to prolonged risk and expense of further litigation, weighing in favor of settlement.

### 3. Risk of Maintaining Class Action Status Throughout the Trial

The Court's class certification order was issued prior to settlement, and not preliminarily approved solely for settlement purposes.  While Plaintiffs have sought to add 20 additional members to the class, as the Court's analysis above finds, this does not endanger Plaintiffs' ability to maintain class action status.

### 4. Extent of Discovery Completed and the Stage of the Proceedings

A Court may presume a settlement is fair "following sufficient discovery and genuine arms-length negotiation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528.  As the Court noted in its order granting preliminary approval, "[t]he Settlement Agreement resulted from extensive arm's-length negotiations.  The parties expended several hundred hours litigating this case, including significant discovery and motion practice." Order Granting Preliminary Approval (Prelim. App.), Dkt. No. 118, at 2.

### 5. Experience and Views of Counsel

Where Class Counsel recommend the proposed terms of settlement, courts are to give their determination "[g]reat weight," because counsel "are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528 (internal quotation marks omitted) (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.1997)); *see also id*. (noting that weight should be given "because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation'" (alteration in original) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F. 3d 373, 378 (9th Cir. 1995))). As the Court noted when granting class certification, Class Counsel were "experienced class action litigators," and thus their recommendation further favors settlement. Class Cert., at 6.

### 6. Presence of a Governmental Participant

Despite receiving notice of the proposed settlement in this action, there is no governmental participant in this action, and "no agency has raised an objection or concern regarding the settlements." Settl. Final App. at 21. Though the government is not "a party to this action, the proposed settlement nevertheless bears the silent imprimatur of government approval because despite receiving notice, no state or federal official has filed an objection to the proposed settlement." *In re Toyota Motor Corp.*, 2013 U.S. Dist. LEXIS 94484, at *238.

### 7. Reaction of the Class Members to the Proposed Settlement

As mentioned in the settlement terms discussed, *supra*, notice was provided by U.S. mail to all class members and the creation of a website, both of which provided class members the opportunity to opt-out of the settlement. Of all 209 class members, only ten notices were ultimately deemed "undeliverable with no forwarding address." Declaration of Emilio Cofinco Regarding Class Notification and Settlement Administration, Dkt. No. 122-2, ¶ 12. No objections or disputes were raised, and no class member requested to excuse themselves., *id*. ¶¶ 13–15, thus "[t]he absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement," *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529.

*   *   *

Based on its analysis of the factors for settlement final approval, this Court finds that the settlement is "fair, reasonable, and adequate." *Lane*, 696 F.3d at 818 (internal quotation marks omitted) (quoting Fed. R. Civ. P. 23(e)). The Court therefore **GRANTS** Plaintiffs' motion for final approval of the class action settlement.

### III. ATTORNEYS' FEES AND COSTS, AND INCENTIVE AWARDS

Plaintiffs also seek an award of attorneys' fees and costs in the amount of $86,000.21 and incentive awards for Plaintiffs Sampson and Munson in the amount of $5,000 each. Motion for Award of Attorneys' Fees and Costs, and Incentive Awards (Mot. for Attys Fees), Dkt. No. 120. As part of the settlement terms, *supra*, Defendants do not oppose Plaintiffs' request for awards up to these amounts.

#### A. Attorneys' Fees and Costs

When a federal court is presiding over a state law claim, state law governs the determination of attorneys' fees. *See MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999) (noting that "so long as state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed'" (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975))).[3] The CCRAA provides for the award of attorneys' fees and costs when plaintiffs prevail in an action. Cal. Civ. Code §§ 1785.31(d). And here, the settlement agreement provides for the fees requested. Class counsel request $75,301.21 in attorneys' fees and $10,699 in costs for a total of $86,000.21.

Courts may exercise discretion in cases "where a settlement produces a common fund for the benefit of the entire class," and may "employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Under the percentage method, the court awards counsel a percentage of the common fund in attorneys' fees, for which the Ninth Circuit has established a 25% benchmark. *Hanlon*, 150 F.3d at 1029. Alternatively,

---

[3] Federal Rule 23 also allows for attorneys' fees, providing that "[i]n a certified class action, the court may award attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

under the lodestar method, the prevailing attorneys are awarded an amount calculated by multiplying the hours they reasonably expended on the litigation times their reasonable hourly rates. This amount may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."

Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 981 (E.D. Cal. 2012) (citation omitted) (quoting In re Bluetooth, 654 F.3d at 942). The percentage method is sometimes preferred, particularly if the use of the lodestar method would endorse a "collusive settlement[] that exchange[d] a low recovery for a high fee award." Suzuki v. Hitachi Glob. Storage Techs., Inc., No. C 06-7289 MHP, 2010 WL 956896, at *2 (N.D. Cal. Mar. 12, 2010) (internal quotation marks omitted) (quoting Lealao v. Beneficial Cal., Inc., 97 Cal. Rptr. 2d 797 (Ct. App. 2000)).

In its preliminary approval of this settlement, the Court noted that "[w]hile Plaintiffs' counsel seeks an award of fees that exceeds the 25% benchmark [of the percentage-of-recovery method], it is possible that an award higher than that amount is appropriate given the significant number of hours dedicated to this case." Prelim. App., at 2–3. Upon review, the Court declines to use the common fund 25% benchmark, and applies the lodestar method. In *Parkinson v. Hyundai Motor America*, the court declined to use the percentage recovery method because the recovery in the case, while seemingly "low," was not unusually so "given the nature of repairs and relatively small size of [the] potential class" and would result in an "arbitrary reduction of the fee award, contrary to the purpose of the fee-shifting statute." 796 F. Supp. 2d 1160, 1171–72 (C.D. Cal. 2010); *see also* Hayward v. Ventura Volvo, 133 Cal. Rptr. 2d 514, 516 (Ct. App. 2003) (noting that limiting a fee award "to an amount less than that reasonably incurred" would run contrary to a fee-shifting statute's purpose of "allow[ing] consumers to pursue remedies in cases . . . where the compensatory damages are relatively modest"). Class Counsel expended hundreds of hours litigating this action, and though the total recovery in this case is relatively low, class members will receive 100% restitution for the payments they made to Defendants. Additionally, Class Counsel have already agreed to a significant reduction of the total amount they could receive under a lodestar calculation, requesting about three times more than would be awarded under the 25% benchmark. *Cf. Parkinson*, 796 F. Supp. 2d at 1171–73 (awarding over ten times more under the lodestar method than would have been awarded under a 25% benchmark calculation). Accordingly, the Court applies the

lodestar method—including Class Counsel's agreed-upon reduction—to determine an award of attorneys' fees and costs.

 Plaintiffs provide a lodestar of $414,376, which they have reduced by 82% to $75,301.21 after deducting costs to comply with the negotiated $86,000.21 cap on fees and costs.  In calculating the number, class counsel asserts that 556.7 hours were expended litigating this case and seeks hourly rates of $750 for lead class counsel and $165 for a paralegal.  *See* Declaration of Jeffrey Wilens in Support of Motion for Award of Attorneys' Fees and Costs (Wilens Decl.), Dkt. No. 120-1, ¶¶ 10, 22; Declaration of Jeffrey Spencer in Support of Motion for Award of Attorneys' Fees and Costs (Spencer Decl.), Dkt. No. 120-2, ¶¶ 47–48.  Class counsel are also requesting $10,699 in costs.  Wilens Decl., ¶ 24.  In the supporting declarations, lead counsel identify the year they were admitted to the bar, a history of their past experience as class counsel, the total number of hours they spent on the case (broken down by task), and their hourly rate.  Wilens Decl.; Spencer Decl. Based on the Court's knowledge of this case and its history, the Court finds the stated number of hours constitute the amount counsel could have "reasonably expended on the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  The declarations highlight that the attorneys here have routinely been awarded the requested or similar rates in this district and other courts across California.  Wilens Decl., ¶¶ 16–21; Spencer Decl. ¶¶ 9–19; *see also Ayala v. U.S. Xpress Enters., Inc.*, No. EDCV 16-137-GW (KKx), 2019 WL 1581395, at *2–3 (finding rates of $600–795 for class counsel to be reasonable "in light of their substantial experience and based on the Court's general knowledge of rates in the Los Angeles legal community").  Given the reasonableness of the rate and hours, the Court concludes that the lodestar is proper—particularly considering counsel's reduction to fit within the settlement's negotiated cap.  Thus, the Court **GRANTS** the motion as to the request for $86,000.21 in fees and costs.

### B. Plaintiffs' Incentive Awards

 Finally, Plaintiffs seek $5,000 incentive awards for named Plaintiffs Kara Sampson and Cybele A. Munson.[4]  Mot. for Attys Fees.  Each named Plaintiff expended at least 50 hours over two years participating in the litigation, *see* Declaration of Kara Sampson, Skt. No. 120-3, ¶¶ 9–12; Declaration of Cybele A. Munson, Dkt. No. 120-4, ¶¶ 8–11, and an award of $5,000 is within the norm of this circuit, *see Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017

---

[4] Named Plaintiff Michell Franklin is not a class representative, and thus is not requesting an incentive award as part of this settlement.  Mot. for Attys Fees, at 19.

WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) ("Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable."). Thus, the Court **GRANTS** the motion as to the request for $5,000 incentive awards for each named class representative.

## IV.    CONCLUSION

For these reasons, the Court **GRANTS** Plaintiff's motions for settlement final approval and attorneys' fees and costs and incentive awards in full. The Court approves the settlement agreement as fair, and awards $86,000.21 in fees and costs to Plaintiffs' counsel and $5,000 in incentive awards for named Plaintiffs Kara Sampson and Cybele A. Munson.

**IT IS SO ORDERED**.

0/03